UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CITIZENS FOR RESPONSIBILITY AND ETHICS in WASHINGTON,<br><br>    Plaintiff,<br><br>  v.<br><br>DEPARTMENT OF LABOR<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)   No. 1:06CV00743 (RMC)<br>)<br>)<br>)<br>)<br>) |

**PLAINTIFF'S REPLY TO DEFENDANT'S
OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT**

As Citizens for Responsibility and Ethics in Washington ("CREW") demonstrated in its opening brief, the Department of Labor ("DOL") completely failed to meet its burden of proving that the information it withheld from production is properly exempt from disclosure under the Freedom of Information Act ("FOIA").  Apparently, DOL recognizes this fact, as well.  In its reply and opposition to CREW's cross-motion for summary judgment, DOL attempts remedial action, attaching a second, "supplemental" declaration of Joseph Plick, in an effort to fill the gaps identified by CREW in its briefing.  DOL, even with its newfound explanations set forth in its brief and supplemental declaration, fails as a matter of law to provide support for its purported Exemption 5 redactions from the documents produced to CREW.  Accordingly, the Court should grant summary judgment to CREW.

**The Exemptions Claimed by DOL Are Not Consistent
With The "Narrow Compass" Required By the Law.**

As CREW established in its opening brief, the limited exemptions to disclosure under FOIA are intended to operate in a manner consistent with the Act's goal of broad disclosure, and

-1-

those exemptions "have been consistently given a narrow compass." <u>Department of Justice v. Tax Analysts</u>, 492 U.S. 136, 151 (1989); <u>see also</u> <u>FBI v. Abramson</u>, 456 U.S. 615, 630 (1982).

One of the privileges incorporated into Exemption 5, 5 U.S.C. §552(b)(5), is the common law privilege regarding the government's deliberative process. Its inclusion in the statute reflects the legislative judgment that the quality of the administrative decisionmaking would be seriously undermined if agencies would be forced to operate in a fishbowl because the full and frank exchange of ideas on legal and policy matters would be impossible.

The purpose of Exemption 5, however, has nothing to do with protecting the agency from the disclosure of controversial or embarrassing material, if that controversial or embarrassing material does not come within the protection of the deliberative process privilege. To be encompassed within the purpose of the privilege, the material must be both "predecisional" and deliberative, and it must also be "interagency" or "intragency." Materials that simply state or explain a decision the government has already made or that attempt to protect material that is purely factual, may not be withheld under Exemption 5. <u>Judicial Watch v. Department of Justice</u>, 365 F.3d 1108 (D.C. Cir. 2004).

As we did in our cross-motion for summary judgment, CREW again addresses each of the claimed Exemption 5 redactions that DOL has attempted to support with its new declaration and arguments. Although more information is given by DOL, it still remains insufficient to sustain the agency's burden.

### A. Exhibit A-2, Document 9, Filed 08/28/2006, page 33 of 111 (DOL#35)

These emails document and record the essence of conversations with and information given to members of the public, specifically, Rick Berman and Larry Lindsey. In so doing, these emails, discussing the content of communications with non-Department of Labor individuals,

simply document purely factual material.

Similarly, on the face of the emails, it is clear that John Duncan was not conveying predecisional material but rather, he was conveying after-the-fact information to the Secretary. What these emails suggest is that Mr. Duncan merely was keeping the Secretary "in the loop" regarding his recent past conversations with Rick Berman. As the June 24, 2004 email states, "Secretary - I **have spoken** to Rick Berman, Executive Director of First Jobs." (Emphasis added). What follows has been redacted under a claim of Exemption 5, and DOL states in its brief that "Mr. Duncan provides his assessment of and detailed recommendations as to how the Secretary should respond regarding the consumer education program about financial literacy." Given the very small space remaining following redaction, it is difficult to accept that the communication was "detailed" in any way, and it is equally difficult to accept that this transmission contains predecisional and deliberative information covered by Exemption 5. DOL simply has not made the case. What it has done is stated in a conclusory fashion that the legal standards are met; this is not acceptable under the binding precedent..

It is equally difficult to accept that there was any exempt agency "decisionmaking" involved in this string of emails, to the extent that the authors were addressing the content of Secretary Chao's biography. A biography, a written account of a person's life, is factual by definition. It is well-settled that the deliberative process privilege does not extend to protect purely factual material if the disclosure of such information would not reveal the nature of the deliberations. <u>EPA v. Mink</u>, 410 U.S. 73, 87-88 (1973). Merely discussing the drafting or process of drafting her biography – or how the Secretary might respond to a request for her biography from an outside organization – does not involve agency deliberations and decisionmaking of the character that Exemption 5 is designed to protect. The content of the

Secretary of Labor's biography, respectfully, has nothing to do with a frank exchange of ideas on legal or policy matters.  DOL would have this Court trivialize the deliberative process privilege by extending it to the garden variety communication between high level agency officials simply discussing what already has transpired.

A final important point must be made regarding this document.  The email sent from the Secretary on Sunday, June 20, 2004 at 3:44 AM, discussing her recent lunch with Larry Lindsey and the two projects that **private citizen** Larry Lindsey was working on**,** does not address any DOL policy that involved deliberations and decisionmaking.  Significantly, DOL does not identify either in its brief or in Mr. Plick's declarations**,** particularly what the Secretary was deliberating or even what policies were under consideration.  The mere fact that the Secretary posed questions in her email that might be addressed by her staff is not sufficient to exempt the material from disclosure.

### B.  Exhibit A-2, Document 9, filed 08/28/2006, page 103 of 111 (DOL #105); Page 106 of 111 (DPL #108), and page 109 of 111 (DOL #111)

This group of emails surrounds an agency discussion regarding a recent article that appeared in *The New York Times*.  Among the materials redacted is a one-sentence email from the Deputy Secretary, which, according to DOL, "had the **general purpose** of preparing to respond, if necessary, to the article, and offered Ms. Kruska certain advice on that end." Defendant's Reply brief at 4 (emphasis added).  Clearly, a decision had already been made regarding how to react and respond to the article if the Deputy Secretary was instructing a presumably lower-ranking employee in the Office of Public Affairs.  Predecisional and deliberative materials are protected under Exemption 5, but materials that simply explain or state a decision that the government has already made are not exempt from disclosure.  Judicial Watch

v. Department of Justice, 365 F.3d 1108 (D.C. Cir. 2004).

A decision had been made at the Office of the Secretary level to respond to the article in a certain way – this required no deliberations and none is offered in the descriptions given by DOL, except in a very conclusory fashion. What also is clear from DOL's most recent submission is that DOL very much wants to keep from the public view the true nature of its relationship with Rick Berman's Center for Union Facts. This is easily demonstrated by the content of the argument at pages 4-5 of its reply brief. In particular, DOL's argument that the email sent by the Deputy Secretary on February 14, 2006, was predecisional because it provided a suggestion to senior staff regarding a possible action to take regarding a newspaper article, attempts to evade the requirement that the role played by the document in the course of an actual deliberative process must be established. See Judicial Watch, Inc. v. Reno, 154 F.Supp. 2d 17, 18 (D.D.C. 2001). DOL does not even try to place the email in the context of playing a role in any real deliberative process. Such creative attempts offered by DOL to defend its wholesale redactions are not sufficient to sustain the agency's burden.

### C. Exhibit A-3, Document 9, filed 8/28/2006, Page 3 of 24 (DOL #0115); Page 4 of 24 (DOL #0116); Page 6 of 24 (DOL #118)

This group of redacted emails summarizes conversations that DOL personnel had with Rick Berman – documenting what was said and containing informational material; however, these are not predecisional agency deliberations. What DOL suggests in asserting Exemption 5 for these email redactions is that any time an agency discusses internally the content of a phone call it has engaged in with a member of the public, the content of those discussions is subject to the deliberative process privilege. Basically, through these Exemption 5 assertions, DOL seeks to keep secret what it told Mr. Berman during a series of phone conversations that took place.

To be clear and direct, a phone call with a citizen to discuss a request that a citizen is making (in this case, support for Mr. Berman's First Jobs Institute), is not entitled to Exemption 5 protection. Any information given during such a communication would necessarily be factual and subject to disclosure. That DOL may now, in hindsight, be embarrassed by its close relationship with Mr. Berman in no way gives rise to a legitimate means to protect its communications with him. The Court must bear in mind "the strong policy of the FOIA that the public is entitled to know what its government is doing and why." Coastal States Gas Corp. Department of Energy, 617 F.2d 854 (D.C. Cir. 1980).

The deliberative process privilege does not protect vaguely described policies and specious claims of "final agency decisions." As the Court of Appeals for the D.C. Circuit has recently stated, "[t]he deliberative process privilege protects agency documents that are both predecisional and deliberative. We deem a document predecisional if 'it was generated before the adoption of an agency policy' and deliberative if 'it reflects the give-and-take of the consultive process." (Emphasis and citations omitted). Judicial Watch, Inc. v. FDA, 449 F.3d 141, 151 (D.C. Cir. 2006). As noted above, the identification of any agency "policy" is largely lacking from DOL's assertions, except to refer in a conclusory fashion, to the "policies" surrounding communications with and about Rick Berman and his organizations.

## CONCLUSION

With respect to each of its Exemption 5 assertions addressed here and in CREW's opening brief, the exemptions claimed by the agency are justified by sweeping and conclusory generalities, and on this basis alone merit close scrutiny by the Court. DOL has failed to meet its burden of proving under the Freedom of Information Act that its redactions properly fall within the scope of Exemption 5. For the foregoing reasons and the reasons set forth in our opening

brief, CREW respectfully requests that the Court deny defendant's motion for summary judgment and grant CREW's cross-motion for summary judgment.

                                        Respectfully submitted,

                                        _____/s/_____

                                        Anne L. Weismann
                                        (D.C. Bar No. 434584)
                                        Sharon Y. Eubanks
                                        (D.C. Bar No. 420147)
                                        Citizens for Responsibility and
                                              Ethics in Washington
                                        1400 Eye street, N.W., Suite 450
                                        Washington, D.C. 20005
                                        Phone: (202) 408-5565
                                        Fax: (202) 588-5020

                                        Attorneys for Plaintiff

Dated: October 5, 2006