# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **CITIZENS FOR RESPONSIBILITY AND ETHICS IN WASHINGTON,** | ) ) ) ) | |
| **Plaintiff,** | ) ) | |
| **v.** | ) ) | **Civil Action No. 06-743 (RMC)** |
| **UNITED STATES DEPARTMENT OF LABOR,** | ) ) ) | |
| **Defendant.** | ) ) ) | |

## <u>MEMORANDUM OPINION</u>

The Citizens for Responsibility and Ethics in Washington ("CREW") filed this case under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, against the Department of Labor ("DOL"). CREW seeks release of the redacted portions of email exchanges relating to DOL's contacts with Richard Berman and various organizations headed or founded by Mr. Berman. DOL filed a motion for summary judgment asserting that the information withheld was not subject to disclosure under FOIA Exemption 5 because the information is protected by the deliberative process privilege. CREW responded with a cross-motion for summary judgment. CREW contends that the deliberative process privilege does not apply. Because the Court agrees with DOL, it will grant DOL's motion for summary judgment and will deny CREW's cross-motion.

## I. BACKGROUND FACTS

CREW is a nonprofit corporation that uses FOIA in its mission to promote government integrity by informing the public regarding government activities. Compl. ¶¶ 4-6. On

March 13, 2006, The Washington Post reported that Lynn Gibson, an aide in DOL's public liaison office, sent an email to DOL employees identifying a new website, UnionFacts.com. Compl. Ex. A, Al Kamen, *Who Gets the Not-So-Coveted Rosemary?*, Wash. Post, Mar. 13, 2006, at A13. According to The Post, the email described UnionFacts.com as a source for information on labor unions and their expenditures. In contrast, The Post described the website as "a stridently anti-union site that talks about the 'political activities and criminal activity of the labor movement.'" *Id.* The website UnionFacts.com is operated by the Center for Union Facts, one of a number of organizations headed or founded by Mr. Berman, a lobbyist. Compl. ¶ 15.

The next day, on March 14, CREW submitted a FOIA request to DOL seeking all records that "mention or relate to the following individuals and entities: Richard Berman, Berman & Company, any employee or representative of Berman & Company and/or Richard Berman, The Center for Union Facts, The Employment Policies Institute Foundation, and The Center for Consumer Freedom."[1] *Id.* Ex. B, FOIA Request Letter, Mar. 14, 2006. CREW received responses from three offices at DOL indicating that there were no responsive documents, and CREW filed this suit. Shortly thereafter, DOL sent responsive documents to CREW. Def.'s Mem. Ex. A-2 & A-3. The documents included three strings of emails that were redacted pursuant to FOIA Exemption 5. *Id.*

DOL filed a motion for summary judgment claiming that it had fully and adequately complied with CREW's FOIA request. CREW filed a cross-motion, arguing that Exemption 5 does

---

[1] Mr. Berman founded the Employment Policies Institute Foundation, an organization that CREW alleges opposes raising the minimum wage. Mr. Berman also heads The Center for Consumer Freedom, an organization that CREW alleges is funded by restaurant money and that has labeled concerns regarding obesity "hype." Compl. ¶ 16.

not apply.

## II.  STANDARD OF REVIEW

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment must be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *see also Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995).  Moreover, summary judgment is properly granted against a party who "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255.  A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252.  In addition, the nonmoving party may not rely solely on allegations or conclusory statements. *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999).  Rather, the nonmoving party must present specific facts that would enable a reasonable jury to find in its favor. *Id.* at 675.  If the evidence "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

FOIA cases are typically and appropriately decided on motions for summary judgment. *Miscavige v. IRS*, 2 F.3d 366, 368 (11th Cir. 1993); *Rushford v. Civiletti*, 485 F. Supp.

477, 481 n.13 (D.D.C. 1980). In a FOIA case, the Court may award summary judgment solely on the basis of information provided by the department or agency in declarations when the declarations describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981); *see also Gallant v. NLRB*, 26 F.3d 168, 171 (D.C. Cir. 1994). An agency must demonstrate that "each document that falls within the class requested either has been produced, is unidentifiable, or is wholly [or partially] exempt from the Act's inspection requirements." *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978) (internal citation and quotation marks omitted). An agency's declarations are accorded "a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *SafeCard Services v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (internal citation and quotation marks omitted).

### III. ANALYSIS

Under FOIA, federal agencies must release agency records upon request, unless one of nine exemptions applies. 5 U.S.C. § 552. "[D]isclosure, not secrecy, is the dominant objective of the Act." *Dep't of the Air Force v. Rose*, 425 U.S. 352, 361 (1976). Even though FOIA "strongly favors prompt disclosure, its nine enumerated exemptions are designed to protect those legitimate governmental and private interests that might be harmed by release of certain types of information." *August v. FBI*, 328 F.3d 697, 699 (D.C. Cir. 2003) (internal quotation marks omitted). The exemptions should be narrowly construed. *Dep't of Justice v. Tax Analysts*, 492 U.S. 136, 151 (1989).

To prevail in a FOIA case, the plaintiff must show that an agency has (1) improperly (2) withheld (3) agency records. *Tax Analysts*, 492 U.S. at 142. CREW complains that DOL improperly redacted information that was not exempt from release. DOL contends that the deliberative process exemption, FOIA Exemption 5, applies.

Exemption 5 provides that FOIA does not apply to "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency[.]" 5 U.S.C. § 552(b)(5). Exemption 5 encompasses materials which would be protected under the attorney-client privilege, the attorney work-product privilege, or the executive deliberative process privilege. *Formaldehyde Inst. v. Dep't Health & Human Servs.*, 889 F.2d 1118, 1121 (D.C. Cir. 1989); *see also NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975) (Exemption 5 includes all documents "normally privileged in the civil discovery context.").

The deliberative process privilege exempts from disclosure documents "reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *NLRB*, 421 U.S. at 150. Further, Exemption 5 "covers recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." *Coastal States Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980). Such documents are protected in order to promote "the quality of agency decisions by protecting open and frank discussion among those who make them within the Government." *Dep't of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 9 (2001); *accord Tax Analysts v. IRS*, 117 F.3d 607, 617 (D.C. Cir. 1997) (the quality of decision-making would be seriously undermined if agencies were forced to operate in a "fish bowl" since open and frank discussion regarding legal or policy matters

would be impossible).

　　　　To qualify for withholding, material must be both predecisional and deliberative.

*Judicial Watch, Inc. v. Dep't of Energy*, 412 F.3d 125, 129 (D.C. Cir. 2005).

> A document is predecisional if it was prepared in order to assist an agency decisionmaker in arriving at his decision, rather than to support a decision already made. Material is deliberative if it reflects the give-and-take of the consultative process. [The D.C. Circuit's] recent decisions on the deliberativeness inquiry have focused on whether disclosure of the requested material would tend to discourage candid discussion within an agency.

*Petroleum Info. Corp. v. Dep't of Interior*, 976 F.2d 1429, 1434 (D.C. Cir. 1992) (citations and internal quotation marks omitted).

### A.  Email String Ending July 13, 2004

　　　　The first string of redacted emails at issue is an exchange between the Secretary of Labor, Elaine Chao, and her staff.  Def.'s Mem. Ex. A-2 at 33.  The Secretary wrote:

> Larry Lindsay and I had lunch recently.  He mentioned two projects he was working on: 1. A "First Job" [sic] description of prominent individuals. [Redacted].  2.  Larry is also working on a consumer education program about financial literacy, I believe. [Redacted].

*Id*.  DOL staff member John Duncan responded:

> Secretary – I have spoken to Rick Berman, Executive Director of First Jobs. [Redacted].  I also found that we have a few weeks to complete the First Jobs "bio" . . . [Redacted].

*Id*.  In the email, the Secretary indicates that she had lunch with Larry Lindsay who was working at Richard Berman's First Jobs Institute.  Def.'s Reply, Supp. Decl. of Joseph Plick ("Supp. Plick Decl.") ¶ 1.  Mr. Lindsey was working on two projects, and the redacted passages concern the DOL staff's preparation of the Secretary's response regarding these projects.  *Id*.  The Secretary's responses were in the formative stage, and the Secretary asked questions and sought the advice of

her staff on these issues. *Id.* Mr. Duncan responded with his "assessment of and detailed recommendations as to how the Secretary should respond." *Id.* ¶ 2.

The deliberative process privilege applies to the redacted material in this email string because the material is both predecisional and deliberative. *Judicial Watch*, 412 F.3d at 129. The material was prepared in order to assist the Secretary in arriving at her decision regarding how to respond to the two projects that Mr. Lindsey had proposed. The redacted material is deliberative because it reflects the "give-and-take of the consultative process." *Petroleum*, 976 F.2d at 1434.

CREW argues that the privilege does not apply to the redacted material, reasoning that the information must be simply a reporting of facts since Mr. Duncan's email starts with the statement "Secretary – I have spoken to Rick Berman, Executive Director of First Jobs." *See EPA v. Mink*, 410 U.S. 73, 87-88 (1973) (deliberative process privilege does not protect purely factual material that would not reveal the nature of deliberations). CREW's argument that the redacted material is purely factual rests on the erroneous assumption that the redacted information merely recounted Mr. Duncan's conversation with Mr. Berman. The Supplemental Declaration of Mr. Plick makes it clear that the redacted portions of the emails concern (1) the Secretary's questions regarding how she should respond to First Jobs' request for her biography and First Jobs' development of a financial literacy program and (2) Mr. Duncan's recommendations regarding DOL's response. Mr. Plick's declaration is accorded "a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability" of information.[2] *SafeCard*, 926 F.2d at 1200. CREW also complains that DOL has not indicated precisely what policies were under consideration. FOIA does not require that DOL "operate in a fish bowl." *Tax Analysts*, 117 F.3d

_____

[2] CREW has not alleged that the Plick Declaration was prepared in bad faith.

at 617.  Further, it is apparent that the Secretary of Labor was considering generally what type of

support, if any, DOL would give to the First Jobs Institute, an organization founded by Mr. Berman,

who has an allegedly anti-union agenda.

### B.  Email Dated February 14, 2006 and March 21-22, 2006

The second string of redacted emails at issue is an exchange between the Secretary

and her staff regarding media articles.  Def.'s Mem. Ex. A-2 at 103, 106, & 109.  On February 14,

2006, Paul Borchers, an employee of DOL's Office of Public Affairs ("OPA"), sent to various DOL

staff the text of a New York Times article entitled "Group Starts Anti-Union Campaign."  *Id.* at 109.

The article was about the Center for Union Facts.  *Id.* at 109-111.  Later the same day, the Deputy

Secretary, Steven Law, emailed Lisa Kruska of OPA about the article.  *Id.* at 109.  Deputy Secretary

Law's one-sentence email was redacted, as the email provided advice to Ms. Kruska in preparing

for DOL's potential response to the article.  Supp. Plick Decl. ¶ 5.

Another media article was forwarded to the Secretary, Deputy Secretary, and

numerous staffers by David James of OPA on March 21, 2006.  Def.'s Mem. Ex. A-2 at 103-105.

This was an article by Joseph Lindsley titled "Union Dues and Don'ts – Financial Disclosure Is a

Wonderful Thing."   The article stated, "[T]he Department of Labor is seriously enforcing its

financial reporting requirements of unions and disclosing the results on line."  *Id.* at 104.  The article

also alleged that the Center for Union Facts was "[u]nofficially assisting in the Labor Department's

efforts."  *Id.* at 105.  On the same day and the day after, Ms. Kruska and Deputy Secretary Law

exchanged emails regarding the article, and their exchange was redacted.  *Id.* at 103, 106, & 109.

Ms. Kruska emailed Deputy Secretary Law regarding her preparation of DOL's response to the

article, and Deputy Secretary Law posed two questions to Ms. Kruska regarding the preparation of

a response.  Supp. Plick Decl. ¶ 6

The deliberative process privilege protects materials "reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *NLRB*, 421 U.S. at 150.  The article by Mr. Lindsley referenced a DOL policy requiring unions to prepare financial reports and to disclose them on the internet.  The online conversation between Ms. Kruska of OPA and Deputy Secretary Law regarding DOL's possible response to the article was predecisional and deliberative — DOL staff were deciding what action, if any, DOL should take in response to a media article that commented on DOL policies.  This information is subject to the deliberative process privilege.

CREW contends that the redacted portions are not "predecisional" — that they contain Deputy Secretary Law's decision regarding the DOL's response to the Lindsley article and his directions to Ms. Kruska regarding carrying out his decision.  CREW provides no support whatsoever for these allegations.  Mr. Plick's declaration is entitled to a  presumption of good faith that cannot be rebutted by CREW's purely speculative claims.  *See SafeCard*, 926 F.2d at 1200.  CREW also asserts that DOL's decision regarding its response to a media article is a decision regarding politics and not policy.  On these facts, the Court disagrees.  DOL plays a critical role as a neutral in its oversight of union finances.  If, as CREW alleges, the Center for Union Facts is "stridently anti-union," the Secretary's relationship with it would certainly raise policy issues.

## C.  Email Dated July 19-20 and 22-23, 2004

The third and final set of redacted emails in dispute are an exchange between Deputy Secretary Law and DOL staff regarding Mr. Berman's request for support for the First Jobs Institute.  Def.'s Mem. Ex. A-3 at 3, 4, & 6.  On July 19, 2004, John Duncan emailed Julie Mulvee, both of

the Office of the Secretary, regarding scheduling a telephone call from Richard Berman concerning the First Jobs Institute. *Id*. at 4. Mr. Duncan stated, "[Redacted]. I can give you the full briefing shortly, but this is the guy who runs the First Jobs Institute, so we want to suggest that we could maybe help via a speech or conference participation, but not a large investment. [Redacted]." *Id*. The redacted portions include Mr. Duncan's advice on how to handle the call and a reminder of an earlier suggestion he had made. Supp. Plick Decl. ¶ 8. On the same day, Ms. Mulvee forwarded the email to Deputy Secretary Law without comment, *id*. ¶ 9, and Deputy Secretary Law sent a two-sentence email to Mr. Duncan, copying Ms. Mulvee, in which he offered his opinion regarding Mr. Duncan's advice on how to handle the call. *Id*.

> The next day, July 20, 2004, Mr. Duncan replied to the Deputy
>
> Secretary as follows:
>
> I will drop by to see if you have a moment to discuss before I call him. But in the event we don't connect, here are a few questions/issues:
>
>  [Redacted].
>
>  The following is what I planned on covering.
>
> *Ethics rules prevent the Secretary from publicly endorse [sic] their program, so she can't be listed on their website or their promotional letters. She will also not be able to provide a testimonial.
>
> *We're not able to make a financial investment because their initiative is not specifically enough related to employment outcomes.
>
> *We will open doors for them at Women's Bureau, an agency whose mission it is to help deliver public service messages such as theirs.

Def.'s Mem. Ex. A-3 at 3. The questions and issues, reflecting policy decisions in process, were redacted from this email. Supp. Plick Decl. ¶ 10. The list of agenda items was not redacted since

these reflect decisions already made.  *Id*.

Associate Deputy Secretary for Policy, Mala Krishnamoorti, replied to Mr. Duncan later that day.  She stated that the Women's Bureau, a DOL agency, already had met with Mr. Berman.  Def.'s Mem. Ex. A-3 at 3.  Deputy Secretary Law's reply was redacted, as it set forth his opinions and suggestions regarding Mr. Duncan's earlier list of "questions/issues."  Supp. Plick Decl. ¶ 11.

On July 22, 2004, Mr. Duncan emailed Deputy Secretary Law, Ms. Krishnamoorti, Ms. Mulvee, and Chief of Staff Andrew Siff.  Def.'s Mem. Ex. A-3 at 6.  Mr. Duncan stated that he had called Mr. Berman and, thus, that Deputy Secretary Law did not need to do so.  *Id*.  Mr. Duncan's email stated:

> Here's what I indicated in the phone call:
>
> •   They need to remove references to the Secretary in all material and any further use of the Secretary's name needs to first be cleared with OSEC.
>
> •   ETA cannot make any investments because First Jobs is not pursuing something tied to a measurable employment outcome.
>
> •   They should call WB [the Women's Bureau] and explore possible collaboration. [Redacted].
>
> •   I said we were still working on the testimonial for them to post on their website. [Redacted].  First Jobs is to check with us if they consider using it in any way besides just having it generically posted along with other VIP testimonials (i.e. for non-promotional purposes).  [Redacted].

*Id*.  The portion redacted after the third bullet point sets forth Mr. Duncan's advice regarding how the Women's Bureau should handle its discussion with Mr. Berman.  Supp. Plick Decl. ¶ 12.  The redacted portions of the fourth bullet point include advice Deputy Secretary Law had given Mr.

Duncan, a request for advice from Chief of Staff Siff, a suggested option regarding the testimonial, and a recommendation that Mr. Duncan was preparing for the Secretary. *Id*.

The redacted materials are predecisional, as they dealt with DOL's attempt to reach a decision regarding how to respond to Mr. Berman's request for support for the First Jobs Institute. The materials are deliberative in that they contain the identification of unresolved issues, questions, opinions, suggestions, advice, and recommendations.

CREW argues that these emails should not have been redacted because they merely recount the content of discussions between DOL staff and Mr. Berman. Again, CREW erroneously assumes that this is the content of the redacted material. The Supplemental Declaration of Mr. Plick indicates that the redacted portions do not include a mere retelling of Mr. Duncan's conversation with Mr. Berman. As explained in detail above, the redacted portions include Deputy Secretary Law and Mr. Duncan's questions, opinions, suggestions, advice, and recommendations regarding policy issues raised by Mr. Berman's request for DOL support for the First Jobs Institute. This information is protected from disclosure by the deliberative process privilege.

## IV.  CONCLUSION

For the foregoing reasons, DOL's motion for summary judgment [Dkt. # 9] will be granted, and CREW's cross-motion for summary judgment [Dkt. # 11] will be denied. A memorializing order accompanies this Memorandum Opinion.


Date: March 22, 2007                                   _____/s/_____
                                                      ROSEMARY M. COLLYER
                                                      United States District Judge